**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | |
| | : | **Criminal No. 19-0166(DLF)** |
| **MALIQUE LEWIS,** | : | |
| | : | |
| *Defendant.* | : | |

## DEFENDANT'S MOTION FOR DISCLOSURE OF BRADY EVIDENCE

Defendant Malique Lewis ("Lewis"), by and through undersigned counsel, and pursuant to the Due Process Protection Act and Local Rule of Criminal Procedure 5.1, respectfully moves this Court for an Order directing the Government to immediately disclose all material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  In support of this Motion, Mr. Lewis states as follows:

### FACTS

The government has charged Mr. Lewis with two counts of kidnapping resulting in death; multiple counts of first degree murder while armed and related offenses.

During the course of discovery, the government has produced voluminous evidence thousands of pages of documents, videos, recorded interrogations and other material. On August 18, 2022, Mr. Lewis submitted to the government a discovery letter, wherein he specifically requested all evidence discoverable pursuant to *Brady*.  On May 22, 2023, Mr. Lewis forwarded to the government a letter specifically requesting:

        a.      The names, addresses, telephone numbers or any contact information; and
        b.      Copies of any notes related to interviews of:

the individuals described in paragraphs 53 through 61 of the Affidavit in Support of an Arrest

Warrant for Malique Lewis (Bates Nos. 000162 – 000164).  In these paragraphs, the affiant, Det. Brian Wise, describes various "tips" that were made known to the government describing other persons who may have committed the murders of Kerrice Lewis and Armani Coles and/or who had a motive to commit the murder of Kerrice Lewis and Armani Coles.  A copy of pages Bates numbered 000162 – 000164 is enclosed as Exh. 1.

Mr. Lewis' requests have ignored. For the reasons stated below, Mr. Lewis respectfully requests that this motion be granted and that the Court compel the government to immediately produce all material pursuant to *Brady*.

## ARGUMENT

The ultimate aim of our criminal justice system is not only to secure convictions, but also to ensure that the rights of the accused are protected. *See Harvey v. Horan*, 285 F.3d 298 (4th Cir. 2002) (Luttig, J., *concurring); Brady v. Maryland*, 373 U.S. 83, 87 (1963).  So fundamental is that twofold aim that our forefathers drafted substantive and procedural due process requirements into the language of the Fifth and Fourteenth Amendments to the Constitution, thereby mandating that prosecutions "comport with prevailing notions of fundamental fairness." *California v. Tombetta*, 467 U.S. 479, 485 (1984). "Fundamental fairness" is not merely an academic ideal, but is, in fact, "essential to the very concept of justice.'" *United States v.Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. California*, 314 U.S. 219, 236(1941).

Although ours is an adversarial system, the government's "chief business" in a criminal prosecution "is not to achieve victory, but to establish justice." *See Brady*, 373 U.S. at n.2 (quoting, remarks of Solicitor General Sobeloff). While "there was a time when concealment and gamesmanship were accepted as part and parcel of the adversarial process of the criminal

justice system" under common law, courts have "decidedly rejected this system long ago."
*Harvey, supra* at 317-318. In fact, the Supreme Court has long held that the government's
"overriding interest" in a prosecution is that "justice be done," and, with that basic tenet in mind,
the Court has recognized that a prosecutor serves the law above all else. *See United States v.*
*Agurs*, 427 U.S. 97, 110-11 (1976) (internal citations omitted).

Obviously, the government has an obligation to prosecute its cases zealously,
however its "primary obligation is to try each case fairly and with due regard for the accused's
rights." *United States v. Carter*, 566 F.2d 1265, 1271 (5th Cir. 1978); *cert. denied*, 436 U.S. 956.
When the government's conduct violates notions of fundamental fairness and is "shocking to the
universal sense of justice," substantive due process is denied. *Kinsella v. United States ex rel.*
*Singleton*, 361 U.S. 234, 246 (1960).

The Supreme Court has "long interpreted this standard of fairness to require that
defendants be afforded a meaningful opportunity to present a complete defense." *Trombetta* at
485. "To safeguard that right….what might loosely be called the area of constitutionally
guaranteed access to evidence" was developed. *Id.* (quoting *Valenzuela-Bernal, supra* at 867);
*See also, Harvey, supra*; *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir. 2004). "Taken
together, this group of constitutional privileges delivers exculpatory evidence into the hands of
the accused," thereby "ensuring the integrity of our criminal justice system." *Trombetta,* supra.

Procedural due process demands that prosecutors produce to a criminal defendant
all *potentially* exculpatory evidence, even in the absence of a specific request, in order to ensure
that the defendant receives a fair trial. *See Harvey, supra (citing Albright v. Oliver*, 510 U.S. 266,
273 & n.6 (1994)) (Emphasis added.); *Augers, supra* at 112. When a prosecutor fails to provide
favorable evidence that is "material to guilt or punishment, irrespective of good faith or bad

faith," it is commonly called a "*Brady* violation." *Brady,* 373 U.S. at 87; *Moore v. Illinois*, 408

U.S. 786, 794-95 (1972). Evidence is considered "favorable" if it would exculpate the

defendant or could be used to impeach a government witness. *United States v. Ellis*, 121 F.3d

908, 914 (4th Cir. 1997); *United States v. Bagley*, 473 U.S. 667, 682 (1985). A defendant's

constitutional right to due process is not violated where the favorable and material evidence is

disclosed in time for its effective use at trial. *United States v.* Andrews, 532 F.3d 900, 907-908

(D.C. Cir. 2008); *United States v. Smith Grading and Paving, Inc.*, 760 F.2d 527, 532 (4th Cir.

1985) (citing *United States v. Higgs*, 713 F.2d 39 (3rd Cir. 1983).

        In addition to its constitutionally mandated *Brady* obligations, the prosecution has

additional obligations to ensure that a defendant is afforded due process.  Local Rule of Criminal

Procedure 5.1 mandates that "the government shall disclose to the defense all information

'favorable to an accused' that is 'material either to guilt or to punishment' under *Brady v.*

*Maryland,* 373 U.S. 83, 87 (1963), and that is known to the government. This requirement

applies regardless of whether the information would itself constitute admissible evidence."

        In this case, the government has charged Mr. Lewis with the kidnapping and

murder of Kerrice Lewis and Armani Coles in December 2017.  During the course of its

investigation, the government received "tips" and other information that other individuals had

motives to kill Ms. Lewis and Mr. Coles and may have killed them.  For example:

53. During the investigation, numerous tips were received by law enforcement. One tip stated that the night before Kerrice Lewis was killed she told the caller that she needed somewhere to lay low because she was beefing with "[W17's nickname]," whose description matched that of W17. Decedent Lewis said she was told "[W17's nickname]" was out to get her. The caller said a few days prior to decedent Lewis's murder decedent Lewis was jumped.

54. In another tip, the caller stated that on New Year's Eve it heard a female say that her boyfriend was a hot head who had just shot and set someone on fire because the person owed him about $2000. The caller provided the first and last name of this female's boyfriend, hereinafter referred to as Person 1, who is not defendants Vines, Lewis, or Briscoe. Another tip, received approximately three days later, stated that the police should check out a person for whom the caller provided a first and last name consistent with that of Person 1. This caller stated it heard Person 1's girlfriend talk about how Person 1 shot, killed, and set someone on fire on Ridge Road.

55. Another tip said, "A young female Kerrice Lewis was found shot and burned in her car...look into the young man she had started to hang with shortly before she passed..don't know his name yet but he is said to have been on Instagram rite after her death flashing money and etc and he was known to not have anything...I think he Robbed and killed her."

The tipster later followed up with, "I got his Instagram name...It's Yiiknow...I think he had something to do with Kerrice Lewis death."

56. In at least two other tips, the callers said that "[W17's middle name]," and/or "[W17's nickname]" was a possible suspect. W17 sometimes goes by its middle name.

57. Another tip stated that the motive for the murders was a robbery set-up.

58. Another individual whose identity is known to law enforcement, told police that Kerrice Lewis was involved in credit card scams and that decedent Lewis was doing good business because she was female and people trusted her. This individual stated that decedents Lewis and Coles were friends and often together. This person stated that decedent Lewis told it that the "New Jersey connect" asked decedent Lewis to set up "[W17's first name]," because "[W17's first name]" stole money from them. Decedent Lewis said she would not set up W17. In text messages between W17 and decedent Lewis on December 26, 2017, decedent Lewis admitted to W17 that she thought about setting up W17 because she was mad at W17, but did not do it.

59. Members of law enforcement spoke to an individual, Witness 2 (W2), who was close to decedent Lewis. W2 said that decedent Lewis had been shot in the months before her murder. W2 said that decedent Lewis told it that "Two-Dog" or "Two-Face" from "Kennedy" shot her. W2 said that "Two-Dog" or "Two-Face" is supposed to be incarcerated currently, but had just got home when he shot decedent Lewis. W2 said this shooting was over a dispute related to gambling. W2 said decedent Lewis confronted her shooter, who then stripped her naked, robbed her, and pistol-whipped her. W2 said that decedent Lewis was involved in credit card scams with W17, Ronzay Green, and Armani Coles. W2 said that it believed this to be a possible cause of decedent Lewis' death. W2 said that W17 and decedent Lewis were beefing because W17 believed decedent Lewis had set up W17 up and got W17 shot at.

60. Witness 3 (W3) was arrested and charged with crimes unrelated to this case. In January 2018, W3 debriefed with the government. According to W3, it is related to decedent Lewis and had heard that shortly before her murder decedent Lewis and her "best friend" got into a dispute with some individuals from the Parkland neighborhood of Washington, DC. According to W3, a short while later the best friend got shot and then decedent Lewis was killed. W3

heard that the person who killed decedent Lewis, hereinafter Person 2, was from Parkland. W3 did not know the name of Person 2, but W3 described him as a dark-skinned, chubby male with a full beard, who frequently wears a black sweat-suit, either Helly Hanson or North Face, and sometimes wears a hat on his head. W3 stated that Person 2 drives an older model red truck, a kind of 4x4 style, and always parked next to the Eddie Leonard's. W3 said Person 2 sells marijuana from this truck, and W3 bought marijuana from Person 2 out of curiosity after the decedent's murder. W3 stated that Person 2 keeps a firearm in his truck and/or on his lap while he talks to people from his truck. W3 also stated that decedent Lewis used PCP and committed a lot of burglaries.

61. In January 2018, the government also debriefed Witness 4 (W4) after W4 had been arrested and charged on an unrelated matter. W4 reported that it had been close to decedent Lewis and at the time of W4's arrest in early December 2017, decedent Lewis had been hanging around "[W17's first name]." W4 did not trust W17, and felt that W17 was causing problems for decedent Lewis.

The evidence sought is clearly *Brady* evidence and must be produced to the defense.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, and any other that may become apparent to the Court, defendant requests that this motion be **GRANTED**.

Dated: Washington, DC
      July 14, 2023                        Respectfully submitted,

                                     **BALAREZO LAW**

                                     /s/ A. Eduardo Balarezo

By:     _____

                                     A. Eduardo Balarezo
                                     DC Bar # 462-659
                                     400 Seventh Street, NW
                                     Suite 306
                                     Washington, DC  20004
                                     (202) 639-0999 (tel)
                                     (202) 639-0899 (fax)

                                     *Counsel for Defendant Malique Lewis*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of July 2023, I caused a true and correct copy of the foregoing Defendant's Motion for Disclosure of *Brady* Information and Incorporated Memorandum of Points and Authorities in Support Thereof in Support Thereof  to be delivered via Electronic Case Filing to the Parties in this case.

/s/

_____

A. Eduardo Balarezo